WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natacha Elizabeth Ruiz,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-00070-PHX-DMF<br><br>**ORDER** |

At issue is Defendant's denial of Plaintiff's application for Title II disability insurance benefits under the Social Security Act ("Act"). Plaintiff ("Claimant") filed a Complaint (Doc. 1) seeking judicial review of the denial, and the Court now considers Claimant's Opening Brief (Doc. 14), Defendant's Response (Doc. 17), Claimant's Reply (Doc. 18), and the Administrative Record (Doc. 13, "R."). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and with the parties' consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court will order the final decision of the Commissioner to be vacated and will remand this matter to the Commissioner for further proceedings consistent with this Order.

**I.    BACKGROUND**

Claimant filed her application on December 17, 2014, alleging disability beginning March 28, 2014 (later amended to February 18, 2015), and was denied initially on July 9, 2015,[1] and upon reconsideration on January 26, 2016. (R. at 10, 102) Claimant requested

---

[1] The ALJ misstates this date as July 1, 2000 in his decision. (R. at 10.) The correct date

a hearing before an administrative law judge ("ALJ"), which was held on December 8, 2017. (*Id.* at 10.) On April 18, 2018, the ALJ issued his decision finding Claimant not disabled (*Id.* at 10-19), which was upheld by the Appeals Council on November 8, 2018 (*Id*. at 1-3). In reaching this conclusion, the ALJ found Claimant had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b). She can occasionally climb ramps, stairs, and ladders but never ladders,[2] ropes or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can frequently reach, handle, fingers, and feel bilaterally. She must avoid concentrated exposure to hazards, including unprotected heights and moving machinery.

(*Id.* at 15) In support of these findings, the ALJ stated:

> The residual functional capacity reached herein is supported by the objective medical evidence, the clinical findings, the longitudinal treatment record, the claimant's activities of daily living and observations from treating and examining physicians. The claimant's back condition, chronic pain and other conditions reasonably limit her to light work activity with additional postural, manipulative and environmental limitations. This is consistent with the findings and opinion of the consultative examiner and supported by the opinion of reviewing physicians. It is also consistent with the claimant's reported and observed activity levels.

(*Id*. at 18)

In formulating the RFC, the ALJ gave "greater weight" to the opinions of non-examining state agency consultative physicians, and only "little weight" to the opinions of Claimant's treating physician. (*Id*. at 18.) The ALJ also discounted Claimant's subjective pain and symptom testimony. (*Id*. at 16.) A vocational expert ("VE") testified that an individual with the above RFC could perform past relevant work as a caseworker or receptionist. (*Id*. at 83.) The ALJ found Claimant not disabled based on this testimony. (R. at 18.)

---

is found in R. at 102.

[2] The ALJ appears to have made a typographical error here. When the ALJ posed the hypothetical RFC to the VE, he stated the individual could "occasionally climb[] ramps or stairs and ladders," but could "never climb any ropes or scaffolds." (R. at 82-83.)

Claimant brings this appeal alleging the ALJ committed materially harmful errors in weighing the medical opinion evidence and discounting Claimant's subjective pain and symptom testimony. (Doc. 14 at 1-2) Claimant states that this appeal "focuses on [her] spinal impairment." (*Id.* at 3.) Thus, the Court will limit its review to substantial evidence and errors in the ALJ's analysis regarding Claimant's spinal impairments.

## II. STANDARD OF REVIEW

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that a reviewing court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. The district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the decision only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). The Court "must consider the record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. LEGAL STANDARD

To determine whether a claimant is "disabled" under the Act, the ALJ employs a five-step process. *See* 20 C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant for the first four steps but shifts to the ALJ at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must show she is not presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, she must show she

suffers from a "severe medically determinable" impairment(s). *Id.* § 404.1520(a)(4)(ii). Third, she must show that the impairment meets or equals an impairment in appendix 1 of subpart P of 20 C.F.R § 404. *Id.* § 404.1520(a)(4)(iii). However, if the claimant fails to satisfy step three, she can still make out a prima facie case of disability at step four by showing she is unable to perform any past relevant work and by meeting steps one and two. *Id.* § 404.1520(a)(4)(iv). The ALJ determines if the claimant met step four by assessing the claimant's RFC. *Id.* At the fifth and final step, the burden shifts to the ALJ to show that the claimant is able to perform other work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(1).

## IV. DISCUSSION

Claimant argues the ALJ committed materially harmful error by: (1) rejecting the medical source statements of Claimant's treating primary care physician, instead granting "greater weight" to the opinions of two non-examining consultative state agency reviewing physicians (Doc. 14 at 1); and (2) rejecting Claimant's pain and fatigue symptoms without providing specific, clear, and convincing reasons supported by substantial evidence in the record (*Id.* at 1-2). Each argument is addressed in turn.

### A. The ALJ erred in rejecting Claimant's treating physician's medical opinions without providing specific, legitimate reasons

Claimant alleges the ALJ erred in rejecting her treating physician's assessments, instead assigning greater weight to the opinions of state agency reviewers who neither examined her nor reviewed the entire medical record. (Doc. 14 at 8)

In assessing a claimant's RFC, the ALJ must evaluate each medical opinion in the record, assign a weight to each, and resolve any conflicts or ambiguities between them. 20 C.F.R. § 404.1527(c); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining physicians are entitled to the least weight. *See Garrison*, 759 F.3d at 1012. If an ALJ is to

depart from this hierarchy, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence" when crediting the opinion of a non-examining physician over a controverted one of a treating physician. *Id.*

In determining how much weight to give any medical opinion, the ALJ considers whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)-(c)(6). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. The "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). However, the "opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Claimant's treating primary care physician, Dr. Kumar Daulat, completed assessment forms on February 18, 2015[3] (R. at 379-381) and again on June 1, 2016[4] (*Id.* at

---

[3] Dr. Daulat opined that Claimant could sit, stand, or walk for 3 hours. She could be on her feet for 15-20 minutes at a time. She could lift up to 10 pounds "frequently" (66% of workday) and 11-20 pounds occasionally (33% of workday). She could carry up to 5 pounds "frequently" and 6-10 pounds "occasionally." She could "rarely" (0-5% of workday) stoop, squat, crawl, climb, or reach. She could "continuously" (>66% of workday) grasp, push or pull controls, and perform fine manipulations. She could not use her feet for repetitive movements or pushing leg controls. She had "total" restrictions regarding unprotected heights, "moderate" restrictions regarding occupational driving and exposure to marked changes in temperature or humidity, and "mild" restrictions with being around moving machinery. She had "moderately severe" (11-15% off task) limitations due to pain.

[4] Dr. Daulat's assessment was that Claimant could sit, stand, or walk for 2 hours or less. She could carry and lift: up to 5 pounds "continuously" (>66% of workday), 6-10 pounds "frequently" (66% of workday), and 11-20 pounds "occasionally" (33% of workday). She

640-642), in which he opined on Claimant's capacity to perform "work related activities." These assessment forms called for Dr. Daulat to check appropriate boxes indicating Claimant's ability to sit, stand, walk, lift, and use her hands and feet for work related activities. (*Id*. at 379-381, 640-642.) The forms also had Dr. Daulat assess Claimant's limitations due to environmental conditions in the workplace and work related limitations as a result of Claimant's pain and fatigue. (*Id.*)

The ALJ accorded Dr. Daulat's assessments "little weight," finding them "not supported by the greater record" and "not consistent with [Claimant's] reported activity levels." (*Id*. at 18.) The ALJ noted that "Dr. Daulat's own progress notes show [Claimant] reported maintaining normal activities of daily living." (*Id*.) The ALJ also stated that because Dr. Daulat is a family practitioner, he was "less qualified to assess [Claimant's] physical capacity." (*Id.*)

The Court concludes the ALJ's reasons provided in his decision are not specific and legitimate. *Garrison*, 759 F.3d at 1012. The ALJ provided no explanation of how "the greater record" conflicted with Dr. Daulat's assessments, citing only to a single treatment record. The ALJ's subsequent statement that Dr. Daulat's assessments were inconsistent with Claimant's "reported activity level" was similarly unsupported. The ALJ omitted any explanation of what evidence of Claimant's reported activities conflicted with which portions of Dr. Daulat's assessments. This lack of specificity is legal error. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

The sole record citation provided by the ALJ to indicate lack of support in the greater record for Dr. Daulat's assessments was to a treatment record containing the notation that Claimant's "[f]unctional" capacity included "[n]ormal activities of daily

---

could "rarely" (0-5% of workday) stoop, squat, crawl, climb, or reach. She could "frequently" handle/grip or grasp, "frequently" finger and perform fine manipulations, and "occasionally" push or pull controls. She could use her feet for repetitive movements or pushing leg controls. She had "moderate" restrictions regarding unprotected heights; occupational driving; and exposure to dust, fumes, and gases. She had "mild" restrictions with regards to being around moving machinery. She had "moderate" (10% off task) limitations due to pain and fatigue.

living." (R. at 419, cited in the ALJ decision as "(7F/37)") However, that same description of Claimant's functional capacity also contained Dr. Daulat's contradictory statements that Claimant was "[n]ot able to perform usual physical activities for age," and the doctor's descriptions of Claimant's specific limitations, including that she was only able to walk a block before suffering leg cramps, she was not able to stand for more than 20 minutes "in rotation," could sit for no more than 20 minutes at a time, could not lift more than 2 kilograms, and was subject to an unspecified limitation in driving. (*Id.*) The ALJ's unexplained reliance on a single note in Claimant's treatment records by Dr. Daulat to the exclusion of other conflicting notations in the same section of the same treatment record runs afoul of the prohibition recognized by the Ninth Circuit against an ALJ "cherry-picking" evidence favorable to a finding of non-disability instead of considering that evidence "in the context of "diagnoses and observations of impairment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Further, the ALJ failed to address how Claimant's ability to perform household related activities would transfer to an ability to carry out the requirements of full-time work identified in the RFC. The Ninth Circuit has explained that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). However, "the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." *Id.* (quotation and alteration omitted). The ALJ did not inquire of Claimant at her hearing or detail in his findings the frequency or duration of Claimant's referenced activities of daily living and failed to explain how Claimant's ability to perform such activities of daily living transferred to a work setting. "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed

all day." *Garrison*, 759 F.3d at 1016.

The ALJ also discounted Dr. Daulat's opinions because he found Dr. Daulat to be "less qualified" as a family practitioner "to assess [Claimant's] physical capacity." (R. at 18.) Without any explanation for this conclusion, the ALJ's statement is not a proper reason for rejecting Dr. Daulat's opinions. Title 20 C.F.R. § 404.1527(c) instructs how an ALJ weighs medical opinions, factoring in such considerations as whether the medical opinion source has examined a claimant, the nature and length of the treatment relationship between the medical opinion source and the claimant, how well-supported a medical opinion is, consistency between a medical opinion and the claimant's record, and the specialization of the medical opinion source. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ gave the opinions of two state agency non-examining consultative physicians "greater weight" in his decision. (R. at 18) The ALJ concluded without explanation that these opinions "were not inconsistent with the greater objective record, particularly regarding their finding that . . . [Claimant was] limited to less than the full range of light work activity, with . . . limitations, to the extent they support the residual functional capacity." (*Id.*)

When an ALJ does not accord a treating source's opinion controlling weight, § 404.1527 provides that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ omitted any specific explanation of why he concluded the opinions of the two consultative non-examining reviewing physicians, both of whom were identified as specialists in internal medicine, should be accorded greater weight than those of Dr. Daulat, Claimant's longtime primary care physician. The ALJ did not discuss or otherwise document application of the § 404.1527(c) factors. The ALJ's reasons for giving greater weight to the opinions of the non-examining state agency medical reviewers failed to set out "a detailed and thorough summary of the facts and conflicting clinical evidence," and the ALJ neither specified the relevant "conflicting clinical evidence" nor made findings in support of his summary conclusions. Accordingly, the ALJ erred by failing to adequately support his decision to reject the medical assessments of treating physician Dr.

Daulat and to instead rely on the opinions of non-examining physicians.

For the above reasons, the Court finds that the ALJ erred in rejecting the opinions of treating physician Daulat and in according "greater weight" to the opinions of non-examining state agency medical reviewers.

### B. The ALJ erred in rejecting Claimant's symptom testimony

Claimant alleges the ALJ erred in rejecting her symptom testimony by failing to articulate specific, clear, and convincing reasons supported by substantial evidence in the record as whole. (Doc. 14 at 16) For the reasons provided below, the Court agrees.

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ also considers a claimant's subjective statements in determining the extent to which her impairments diminish her capacity for work. 20 C.F.R. § 404.1529(c)(3). "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Thus, before evaluating a claimant's subjective testimony, the ALJ must first determine whether the claimant has presented "objective medical evidence" of an "impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); *see* 42 U.S.C. § 423(d)(5)(A). Next, the ALJ evaluates the alleged "intensity and persistence" of the symptoms. 20 C.F.R. § 404.1529(c)(1). Since pain and symptoms "are subjective and difficult to quantify," a claimant's pain and symptoms will only be determined to diminish a claimant's work capacity to the extent that they can be "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* §§ 404.1529(a), (c)(3). However, a claimant's testimony "cannot be rejected solely because the objective medical evidence does not support the severity of her impairment." *Thomas*, 278 F.3d at 959.

Unless there is evidence of malingering by the claimant, an ALJ may only discredit pain or symptom testimony for reasons that are specific, clear, and convincing. *Garrison*,

759 F.3d at 1014-15. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Id.* at 1010. General findings pertaining to a claimant's credibility are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 494.

The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the client's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1294 (9th Cir. 1996)); *see* 20 C.F.R. § 404.1529(c)(4). Additionally, while a "lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [the] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ cited no evidence of malingering and found Claimant had underlying impairments, which were severe in combination: (a) degenerative disc disease of the cervical, thoracic, and lumbar spine; (b) status post fusion with failed back syndrome and sacroiliitis; (c) chronic pain syndrome; (d) irritable bowel syndrome; and (e) gastroesophageal reflux disease. (R. at 12) However, the ALJ discounted Claimant's testimony regarding the intensity, persistence, and limiting effects of her symptoms, finding it "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 16.)

First, the ALJ cited that Claimant had moved more than one time since her alleged onset date, including flying back to Chicago in order to close a mortgage; had sold

triplexes; and is active on her cellphone. (*Id.*) He reasoned that this evidence demonstrated "good cognitive functioning." (*Id.*) Since the ALJ did not relate this evidence to Claimant's spinal impairment, the subject of this appeal, the Court will not address this reason.

The ALJ also cites to the fact that Claimant underwent three lumbar spine surgeries, but then returned to work after each. (*Id.* at 17.) The Court does not find this reason convincing for two reasons. First, as noted by the ALJ, these surgeries were performed in 2006, 2008, and 2010; thus, there is a significant time gap of five years between the last surgery and the alleged date of disability (February 18, 2015), which reduces the probative value of this evidence. (*Id.* at 16.) Second, despite these surgeries, Claimant still needed required extensive pain management. In fact, the ALJ states, "[Claimant] has experienced chronic back pain despite the surgeries and required opioid pain medication for many years." (*Id.*) He further notes that in 2014 Claimant had a pain stimulator put in that was later removed due to worsening of the pain. (*Id.*) Moreover, he notes that Claimant engaged in physical therapy and received epidural injections. (*Id.*) A treating physician assistant wrote on June 25, 2015, "[Claimant] has been through several injections and the spinal cord stimulatory in the past without adequate pain relief." (R. at 585.) Because of this, the physician assistant arranged for Claimant to meet with the physician to discuss further interventional treatments. (*Id.* at 585.) Thus, the ALJ's citation to Claimant returning to work years before the alleged onset date does nothing to discredit her testimony regarding her pain and symptoms as of the alleged onset date.

The ALJ also noted that Claimant was "somewhat reluctant" to discuss her daily activities and "appeared guarded in her response to related questioning." (*Id.* at 17.) The ALJ does not explicitly state that he disbelieved her because of these observations, nor did the ALJ cite any evidence of malingering. In any case, the Court does not find these observations and opinions concerning Claimant's behavior sufficiently "clear and convincing" to warrant discount of her testimony. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Sheer disbelief is no substitute for substantial evidence.").

The ALJ also found that Claimant "is functionally independent and maintains normal daily activities." (R. at 17.) He noted that she drives a vehicle to shop and attend medical appointments, performs domestic chores, is independent in personal care, "surfs the internet," and watches TV. (*Id.*) He further noted Claimant "does not require a cane or other assistive device despite her claim that she cannot stand or walk for more than 20 minutes at a time." (*Id.*) The ALJ concluded that "[t]hese activity levels are otherwise consistent with the restrictions and limitations outlined in the residual functional capacity." (*Id.*)

At the hearing, Claimant testified she has to alter positions because of her pain at night and that she then needs to nap four or five times during the day for between a half hour and an hour, depending on when her "pain comes back." (*Id.* at 68.) She said she could wash dishes, although it took her a while, did not wash laundry but was able to put laundered clothes on hangers, and was able to dress and feed herself. (*Id.* at 64-65.) Claimant stated she could walk back and forth in front of her house but was unable to do any yardwork. (*Id.* at 65) Claimant testified she could stand for up to 20 minutes at a time, walk for 15 to 20 minutes at a time, and sit for about 15 minutes before needing to stand or do something else. (*Id.* at 70.) Claimant's description of her activities of daily living are consistent with her testimony of pain and fatigue. As the Ninth Circuit has stated, an "ability to talk on the phone, prepare meals once or twice daily, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day . . . is inconsistent with an inability to function in a workplace environment." *Garrison*, 759 F.3d at 1016. In that case, the Ninth Circuit concluded that the ALJ's identification of "supposed inconsistencies between [the claimant's] daily activities and her testimony" did not "satisfy the requirement of a clear, convincing, and specific reason to discredit [the claimant's] testimony regarding her pain-related impairments." *Id.* Similarly, here the ALJ erred by failing to provide specific, clear and convincing reasons supported by substantial evidence for rejecting Claimant's testimony about her pain symptoms and her level of limitation.

## V. CONCLUSION

For the reasons discussed above, the Court holds the ALJ erred by rejecting Dr. Daulat's medical opinions and Claimant's symptom testimony. Given that the ALJ's RFC determination was based on these errors, the Court cannot deem the errors harmless.

## VI. REMAND FOR FURTHER PROCEEDINGS

Claimant urges the Court to remand for payment of benefits or, alternatively, for additional proceedings. (Doc. 14 at 22) The Commissioner urges the Court to affirm the Commissioner's final decision or, alternatively, to remand for further proceedings. (Doc. 17 at 19)

In the Ninth Circuit, a remand with instruction to award benefits is appropriate if each of three circumstances exist: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence …; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. A court's decision to remand a disability benefits case to the Social Security Administration for payment of benefits or for further proceedings is discretionary. *Harman v. Apfel*, 211 F.3d 1172, 1173 (9th Cir. 2000). However, remand for an award of benefits is granted only in "rare circumstances," "where no outstanding issues remain and further proceedings would not be useful" and where "the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Treichler*, 775 F.3d at 1100-01 (citation and internal quotation marks omitted). *See also Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), amended Jan. 25, 2018 ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.") Instead, generally the court will "remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citation and internal quotation marks omitted).

In *Treichler*, the Ninth Circuit cited with approval its earlier decision to remand a case after an ALJ "erred in making inadequate findings to support his conclusion that the

claimant was not credible" and to allow "'further findings evaluating the credibility of [claimant's] subjective complaints,' while noting that on remand the ALJ could deny benefits if he made adequate findings." *Id.* (quoting *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995)). Moreover, this Court cannot conclude that the record provides "not the slightest uncertainty as to the outcome." *Id.* at 1101.

Further proceedings are appropriate here because the ALJ must: (1) provide specific, legitimate reasons for rejecting Dr. Daulat's medical opinions; and (2) set forth specific, clear, and convincing reasons for rejecting Claimant's symptom testimony, providing specific citations to the medical record to support his conclusions.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **VACATED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment.

Dated this 6th day of March, 2020.

_____
Honorable Deborah M. Fine
United States Magistrate Judge